# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

|  |  |  |
|---|---|---|
| DR. JAMES ALBERT McALEER & | ) | |
| LINDA McALEER, individually and on | ) | |
| Behalf of all others similarly situated, | ) | |
| | ) | CASE NO. 6:17-cv-01142- PGB-TBS |
| Plaintiffs, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| DEEP ROOT ANALYTICS, LLC, | ) | |
| a Virginia limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
## AMENDED COMPLAINT AND STRIKE CLASS ALLEGATIONS AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

William C. Jackson
Travis LeBlanc
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Suite 1100
Washington, DC 20005
202-237-2727
202-237-6131 (Fax)
wjackson@bsfllp.com
tleblanc@bsfllp.com
jknight@bsfllp.com

Karen C. Dyer
Florida Bar No. 716324
BOIES SCHILLER FLEXNER LLP
121 South Orange Avenue, Suite 840
Orlando, Florida 32801
407-425-7118
407-425-7047 (Fax)
kdyer@bsfllp.com

September 13, 2017

Attorneys for Defendant
Deep Root Analytics, LLC

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS .....................................................................................................4

I.  Plaintiffs Allege Their "Private Information" Was Disclosed To A Cyber
    Researcher Who Gained Unauthorized Access To DRA's Database. ...................................4

II. Plaintiffs' Allegedly "Private Information" Is A Public Record Freely
    Available From The State Of Florida. ..................................................................................5

LEGAL STANDARDS ...........................................................................................................8

     A.  Subject Matter Jurisdiction – Rule 12(b)(1) ...................................................................8

     B.  Personal Jurisdiction – Rule 12(b)(2) ..............................................................................9

     C.  Failure to State a Claim – Rule 12(b)(6) .........................................................................9

ARGUMENT .........................................................................................................................10

I.  Plaintiffs' Voter Information Is Not "Private Information" As A Matter Of
    Law. ...................................................................................................................................10

II. Plaintiffs' Complaint Lacks Subject Matter Jurisdiction....................................................13

     A.  Plaintiffs Have No Standing. .........................................................................................13

     B.  Plaintiffs' Bare Allegations Fail To Satisfy The Amount In Controversy
        Requirement....................................................................................................................17

III. Plaintiffs Have Failed To Plead Facts To Sustain Personal Jurisdiction Over
    DRA. ..................................................................................................................................18

IV. Plaintiffs' Complaint Fails To State A Claim For Which Relief Can Be
    Granted...............................................................................................................................22

     A.  The Florida Information Protection Act Eliminates Any Common Law
        Negligence Claim By Plaintiffs. ...................................................................................22

B.     DRA Did Not Owe Or Breach A Duty To Plaintiffs, Because Plaintiffs'
       "Private Information" Was Already Public. ...............................................................24

C.     Plaintiffs Have Not Sufficiently Alleged Injury Or Causation....................................26

V.     Plaintiffs Have Not Properly Alleged The Existence Of A "Protected Class."....................28

CONCLUSION.............................................................................................................................29

**CASES**

*Abramowitz v. Westport Nat'l Bank*,
   No. 09-60510-CIV, 2009 WL 10667468 (S.D. Fla. Nov. 5, 2009) .............................. 9, 21

*Aircraft Logistics, Inc. v. H.E. Sutton Forwarding Co., LLC.*,
   1 So.3d 309 (Fla. Dist. Ct. App. 2009) ........................................................................... 23

*Alonso v. Blue Sky Resorts, LLC*,
   179 F. Supp. 3d 857 (S.D. Ind. 2016) ............................................................................. 14

*Andrews v. Home Depot U.S.A., Inc.*,
   No. Civ.A.03CV5200 (DMC), 2005 WL 1490474 (D.N.J. June 23, 2005) .................... 28

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 9, 27

*Austin and Laurato, P.A. v. United States*,
   539 F. App'x 957 (11th Cir. 2013) .................................................................................. 12

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ........................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 9, 25, 27

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ....................................................................................... 13

*Bradley v. Kelly Services, Inc.*,
   224 F. App'x 893 (11th Cir. 2007) .................................................................................. 17

*Bristol-Myers Squibb Co. v. Superior Court of Cal., S. F. Cty.*,
   137 S. Ct. 1773 (2017) ..................................................................................................... 18

*Burton v. MAPCO Exp., Inc.*,
   47 F. Supp. 3d 1279 (N.D. Ala. 2014) ............................................................................ 14

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
   902 F.2d 829 (11th Cir. 1990) ......................................................................................... 19

*Chaparro v. Carnival Corp.*,
   693 F.3d 1333 (11th Cir. 2012) ......................................................................................... 9

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ................................................................................. 8, 13, 14, 15

*Claybrook v. Slater*,
111 F.3d 904 (D.C. Cir. 1997) ........................................................................ 12

*Cottone v. Reno*,
193 F.3d 550 (D.C. Cir. 1999) ........................................................................ 24

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975) ......................................................................................... 13

*Crenshaw v. City of Defuniak Springs*,
No. 3:13CV50/MCR/EMT, 2014 WL 667689 (N.D. Fla. Feb. 20, 2014) ......... 9

*Deese v. McKinnonville Hunting Club, Inc.*,
874 So. 2d 1282 (Fla. Dist. Ct. App. 2004) .................................................... 26

*Dibble v. Avrich*,
No. 14-CIV-61264, 2014 WL 5305468 (S.D. Fla. Oct. 15, 2014) ................... 17

*Drennon-Gala v. Holder*,
No. 1:08-CV-321G-JEC, 2011 WL 1225784 (N.D. Ga. Mar. 30, 2011) ......... 13, 24

*Duqum v. Scottrade, Inc.*,
 No. 4:15-CV-1537, 2016 WL 3683001 (E.D. Mo. July 12, 2016) .................. 15

*Dynetech Corp. v. Leonard Fitness, Inc.*,
523 F. Supp. 2d 1344 (M.D. Fla. 2007) .......................................................... 21

*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*,
673 F. App'x 925 (11th Cir. 2016) ................................................................. 29

*FDIC v. Dye*,
642 F.2d 833 (5th Cir. 1981) .......................................................................... 13

*Georges v. Accutira Mortg., Inc.*,
No. 4:08–cv–201 (JCH), 2008 WL 2079125 (E.D. Mo. May 15, 2008) ......... 27

*Goldberg v. Fla. Power & Light Co.*,
899 So.2d 1105 (Fla. 2005) ............................................................................ 23

*Green v. eBay Inc.*,
No. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015) ............................... 14

*Hammond v. The Bank of N.Y. Mellon Corp.*,
 No. 08-CIV-6060-RMB-RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ................ 25

*Hughes v. McDonald's Corp.*,
 No. C 14-1700 PJH, 2014 WL 3797488 (N.D. Cal. July 31, 2014) ................................ 17

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
 45 F. Supp. 3d 14 (D.D.C. 2014) ...................................................................................... 14

*In re SuperValu, Inc.*,
 No. 16-2378, 2017 WL 3722455 (8th Cir. Aug. 30, 2017) ........................................ 14, 15

*In re Zappos.com, Inc.*,
 108 F. Supp. 3d 949 (D. Nev. 2015) ................................................................................ 16

*J. McIntyre Mach., Ltd. v. Nicastro*,
 564 U.S. 873 (2011) .......................................................................................................... 20

*Jackson v. Sweat*,
 783 So.2d 1207 (Fla. Dist. Ct. App. 2001) ...................................................................... 21

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
 626 F.3d 1327  (11th Cir. 2010) ........................................................................ 10, 23, 25

*Jameson v. State Farm Mut. Auto. Ins. Co.*,
 871 F. Supp. 2d 862 (W.D. Mo. 2012) ............................................................................ 27

*Kayfetz v. A.M. Best Roofing, Inc.*,
 832 So.2d 784 (Fla. Dist. Ct. App. 2002) ........................................................................ 21

*Kuhns v. Scottrade, Inc.*,
 No. 16-3426, 2017 WL 3584046 (8th Cir. Aug. 21, 2017) ............................................. 26

*Lamb v. Charlotte Cty.*,
 429 F. Supp. 2d 1302 (M.D. Fla. 2006) .............................................................................. 8

*Lawrence v. Dunbar*,
 919 F.2d 1525 (11th Cir. 1990) .......................................................................................... 8

*Licciardello v. Lovelady*,
 544 F.3d 1280 (11th Cir. 2008) ........................................................................................ 18

*Louis v. Toyota Fin. Servs.*,
 No. 1:15-CV-84-MP-GRJ, 2015 WL 6159480 (N.D. Fla. Oct. 20, 2015) ...................... 18

*Louis v. Toyota Fin. Servs.*,
No. 1:15-CV-84-MP-GRJ, 2015 WL 6167407 (N.D. Fla. Sept. 3, 2015) ...................... 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................ 12

*Mann v. Unum Life Ins. Co. of Am.*,
505 F. App'x 854 (11th Cir. 2013) ...................................................................... 17, 18

*McCain v. Fla. Power Corp.*,
593 So.2d 500 (Fla. 1992) ....................................................................................... 23

*Morrison v. Amway Corp.*,
323 F.3d 920 (11th Cir. 2003) ................................................................................... 8

*Mulhall v. UNITE HERE Local 355*,
618 F.3d 1279 (11th Cir. 2010) .................................................................................. 8

*Nicklaw v. Citimortgage, Inc.*,
839 F.3d 998 (11th Cir. 2016) ................................................................................. 12

*Peters v. St. Joseph Servs. Corp.*,
74 F. Supp. 3d 847 (S.D. Tex. 2015) ........................................................................ 14

*Pisciotta v. Old Nat'l Bancorp*,
499 F.3d 629 (7th Cir. 2007) .................................................................................... 22

*Posner v. Essex Ins. Co.*,
178 F.3d 1209 (11th Cir. 1999) ................................................................................ 20

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ................................................................................ 15

*Rios v. Direct Mail Express, Inc.*,
435 F. Supp. 2d 1199 (S.D. Fla. 2006) ...................................................................... 10

*Rios v. State Farm Fire & Cas. Co.*,
469 F. Supp. 2d 727 (S.D. Iowa 2007) ...................................................................... 28

*Saunders v. BellSouth Advert. & Pub. Corp.*,
No. 98-1885-CIV, 1998 WL 1051961 (S.D. Fla. Nov. 10, 1998) ................................... 28

*Smith v. Lyons, Doughty & Veldhuius, P.C.*,
No. 07-5139, 2008 WL 2885887 (D.N.J. July 23, 2008) .............................................. 28

*Smith v. Trans-Siberian Orchestra,*
 689 F. Supp. 2d 1310 (M.D. Fla. 2010) ........................................................... 9, 20

*Spokeo, Inc. v. Robins,*
 136 S. Ct. 1540 (2016) ......................................................................... 7, 13, 14

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,*
 524 F.3d 1229 (11th Cir. 2008) ..................................................................... 7

*Stearns v. Select Comfort Retail Corp.,*
 763 F. Supp. 2d 1128 (N.D. Cal. 2010) .......................................................... 28

*Tieder v. Little,*
 502 So. 2d 923 (Fla. Dist. Ct. App. 1987) ...................................................... 26

*Torres v. Wendy's Co.,*
 195 F. Supp. 3d 1278 (M.D. Fla. 2016) ..................................................... 13, 14

*U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.,*
 No. 13-1499, 2014 WL 3748639 (D. Minn. July 30, 2014) ............................... 14

*Unchageri v. Carefirst of Md., Inc.,*
 No. 16-1068, 2016 WL 8255013 (C.D. Ill. Nov. 14, 2016) ............................... 16

*United Techs. Corp. v. Mazer,*
 556 F.3d 1260 (11th Cir. 2009) ..................................................................... 8

*Walewski v. Zenimax Media, Inc.,*
 502 F. App'x 857 (11th Cir. 2012) ............................................................... 28

*Willingham v. Global Payments, Inc.,*
 No. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ........................ 24

*Worix v. MedAssets, Inc.,*
 869 F. Supp. 2d 893 (N.D. Ill. 2012) ............................................................. 12

*Zarichny v. Complete Payment Recovery Servs., Inc.,*
 80 F. Supp. 3d 610 (E.D. Pa. 2015) .............................................................. 28

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

28 U.S.C. § 1332(d)(2) ............................................................................... 16

28 U.S.C. § 1332(d)(6) ............................................................................... 16

Fed. R. Civ. P. 12(b) .................................................................................... 7

Fed. R. Civ. P. 12(b)(1)...................................................................................................... 1, 8

Fed. R. Civ. P. 12(b)(2)...................................................................................................... 1, 8

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1, 9, 25

Fed. R. Civ. P. 23(b)(3)......................................................................................................... 3

Fla Stat. Ann. § 48.193(1)(a)(2)......................................................................................... 19

Fla. Const. art. I, § 24(c).................................................................................................... 10

Fla. Const. art. VI, § 2........................................................................................................ 10

Fla. Stat. Ann. § 119.071.................................................................................................... 11

Fla. Stat. Ann. § 119.071(4)2(a)–(p)................................................................................... 6

Fla. Stat. Ann. § 119.071(4)2–3..................................................................................... 6, 11

Fla. Stat. Ann. § 48.193(1)(a)........................................................................................ 2, 18

Fla. Stat. Ann. § 48.193(1)(a)(1)........................................................................................ 19

Fla. Stat. Ann. § 48.193(1)(a)(3)–(5)................................................................................. 19

Fla. Stat. Ann. § 48.193(1)(a)(6)........................................................................................ 19

Fla. Stat. Ann. § 48.193(1)(a)(7)–(9)................................................................................. 19

Fla. Stat. Ann. § 501.171(1)(b).......................................................................................... 22

Fla. Stat. Ann. § 501.171(1)(c).......................................................................................... 22

Fla. Stat. Ann. § 501.171(1)(g)(1)(a)................................................................................. 22

Fla. Stat. Ann. § 501.171(1)(g)(1)(b)................................................................................. 22

Fla. Stat. Ann. § 501.171(1)(g)(2)..................................................................................... 22

Fla. Stat. Ann. § 97.0585(1)–(2)........................................................................................ 11

U.S. Const. art. III, § 2.......................................................................................................... 7

# OTHER AUTHORITIES

Ryan Bort, *Voting Records of Over 40 Million Americans Up For Sale On Dark Web*, NEWSWEEK (July 27, 2017 12:58 PM), http://www.newsweek.com/voting-records-sale-dark-web-642892 ............................ 5, 17

Voter Extract Disk Layout, Fla. Div. of Elects., http://dos.myflorida.com/media/696057/voter-extract-file-layout.pdf (last visited August 24, 2017) .................................. 6

Voter Extract Disk Request, Fla. Div. of Elects., http://dos.myflorida.com/elections/data-statistics/voter-registration-statistics/voter-extract-disk-request/ (last visited August 24, 2017).................................. 5

Voter Information As a Public Record, Fla. Div. of Elects., http://dos.myflorida.com/elections/for-voters/voter-registration/voter-information-as-a-public-record/ (last visited August 24, 2017) ..................................... 6, 8

Defendant Deep Root Analytics, LLC ("DRA") moves to dismiss with prejudice Plaintiffs' Second Amended Complaint ("Compl.") (Dkt. 26) under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

## PRELIMINARY STATEMENT[1]

DRA is a small, Virginia-based data analytics contractor (Compl. ¶¶ 8-10) hired to help its customers "understand the[ir] target constituenc[ies]" (*id.* ¶ 9) by "analyz[ing the voting public's] proclivities, such as where the voter might fall on issues" (*id.* ¶ 10). In mid-June 2017, an unauthorized "cyber risk analyst" conducted an operation to circumvent DRA's security to identify a DRA database that he knew was not intended for his or for public consumption. After gaining unauthorized access, he downloaded data from DRA. Thereafter, instead of contacting DRA, he contacted multiple media outlets and publicized the fact that he possessed DRA's proprietary data. Upon learning of his unauthorized access, DRA appropriately "update[d] the access settings" that it already had in place and "put protocols in place to prevent further access." (*Id.* ¶ 17).

The data acquired by the cyber researcher included DRA's proprietary modeled data as well as publicly-available data about voters in the United States: registered names, registered addresses, and registered phone numbers, and other information Plaintiffs provided when they registered to vote in Florida or elsewhere.[2] As the data at issue is publicly available, the reality is that the State of Florida has produced Plaintiffs' so-called "Private

---

[1]     This preliminary statement and statement of facts are based on allegations and sources from Plaintiffs' Second Amended Complaint as well as public records from the State of Florida subject to judicial notice. Use of Plaintiffs' allegations here is not an admission that these allegations are true or correct.

[2]     Although Plaintiffs seek to represent broader classes, the Second Amended Complaint expressly pleads that "the harm more particularly alleged herein occurred to Florida residents." (Compl. ¶ 4).

Information" at least 3,683 times, or on average 2-3 times per day, via constitutionally-authorized public records requests since January 2013. It is the same information that anyone could obtain from the State today. In fact, in the course of preparing this Motion to Dismiss, DRA's counsel was able to obtain a copy of the Florida registered voter file via a simple public records request. (*See* Ex. A, Decl. of Jon R. Knight). The fact that a cyber researcher was able to gain unauthorized access to DRA's files—containing information previously made public by the State of Florida—does not expose any more information about the Plaintiffs than what was already public; nor does it even trivially increase Plaintiffs' risk of identity theft and loss of privacy.

Less than a week after DRA prevented further access to its data, Plaintiffs first filed suit. (Dkt. 1). On July 12, 2017, DRA filed a Motion to Dismiss Plaintiffs' original Complaint. Rather than opposing that motion, Plaintiffs notified this Court that "Defendant's arguments … are well taken," and requested 30 days to file an amended complaint to address some of the arguments for dismissal. (Dkt. 21). Plaintiffs filed an Amended Complaint, and then a Second Amended Complaint. The recently-filed Second Amended Complaint continues to fail to correct the flaws in Plaintiffs' theories, and remains defective as a matter of law. Considering that Plaintiffs have been unable to assert a valid claim after multiple opportunities to do so, this case should be dismissed with prejudice.

*First*, Plaintiffs' alleged injury—an increased risk of identity theft at some point in the distant future—is speculative at best. Plaintiffs lack standing to sue because they have not (and could not have) suffered an injury-in-fact as a result of the disclosure of information already in the public sphere. Even assuming *arguendo* that Plaintiffs may experience identity

theft at some point in the distant future, Plaintiffs have not alleged facts sufficient to establish that the present value of such an injury that would be attributable to DRA meets the jurisdictional threshold of $5 million.

*Second*, even if the Court determines that Plaintiffs have standing, their claims should still be dismissed for lack of personal jurisdiction. DRA is a Virginia company that has no significant contacts with Florida, and Plaintiffs have not alleged facts sufficient to show DRA is subject to Florida's long-arm statute. *See* Fla. Stat. Ann. § 48.193(1)(a).

*Third*, even if Plaintiffs had alleged sufficient facts to support the Court's exercise of jurisdiction, their Second Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs' negligence claim must fail because all of the allegedly "Private Information" was and is in the public domain, and they have no privacy interest that could have been affected by the exposure of the alleged "Private Information" to the cyber researcher (or anyone else for that matter). And even if they did have such an interest, it would be impossible now—just weeks after the alleged breach—to determine whether any actual incident of identity theft at some point in the distant future would have resulted from this particular incident.

*Finally*, if the Court does not dismiss the Second Amended Complaint in its entirety, the Court should strike Plaintiffs' newly-proposed "Protected Class." Any claim Plaintiffs may be asserting on behalf of that proposed class should be dismissed both because the named Plaintiffs do not allege they are members of the class and because, from the face of the Second Amended Complaint, the class is overbroad as a matter of law. In sum, Plaintiffs' claims have no cognizable basis under law. The Second Amended Complaint should be

dismissed with prejudice.

## STATEMENT OF FACTS

**I.**     **Plaintiffs Allege Their "Private Information" Was Disclosed To A Cyber Researcher Who Gained Unauthorized Access To DRA's Database.**

On or around June 12, 2017, Chris Vickery, a "Cyber Risk Analyst" for a for-profit company, UpGuard, Inc., conducted an operation to access DRA's online data repositories hosted in "the cloud" through Amazon Web Services. While his attempts to access DRA's data repositories were mostly unsuccessful, he was able to successfully access an online DRA data repository that contained information on registered voters in the United States, including their registered names, registered addresses, registered telephone numbers, registered dates of birth, and voter ID numbers. (Compl. ¶¶ 1, 12; Compl. Ex. A at 1). Exhibit A to the Second Amended Complaint notes, however, that "not every field [in the DRA data repository] is populated for each individual." (Compl. Ex. A at 3). For some registered voters, the repository may have had only phonebook-type information such as their registered names, registered addresses, and registered phone numbers (if known), while for other registered voters it may have contained other public record-type information such as election voting history, registered political parties, and voter ID numbers. (*Id.* at 1). Mr. Vickery spent two days surreptitiously downloading the information without DRA's permission. (*Id.* at 2). The Second Amended Complaint describes Mr. Vickery's conduct as an "intentional criminal act." (Compl. ¶ 41). By the night of June 14, 2017, according to Mr. Vickery, the data source "was … secured [.]" (Compl. Ex. A at 2). Since this incident, DRA has imposed additional security protocols and restrictions on its data. (Compl. ¶ 17).

Plaintiffs allege that their "Private Information" was included in what was "stolen

from [DRA]" by Mr. Vickery. (Compl. ¶ 6; *see id.* ¶ 1). They further allege that DRA did not

"adequately protect and safeguard" their information. (*Id.* ¶ 37). Mr. Vickery is the only

individual whom the Plaintiffs identify as having had unauthorized access to the "Private

Information" in DRA's files. (*Id.* ¶¶ 12, 36–37).[3] Plaintiffs do not allege that Mr. Vickery

published or disseminated DRA's data. Nor do Plaintiffs allege whether their "Private

Information" was already in the public domain. Plaintiffs claim only that DRA was negligent

and that Plaintiffs are harmed by the *potential* for "identity theft, which may take months, if

not years, to discover and detect," the "*likelihood* that such injury will occur," and the

"*increased risk* of future harm" and "a loss of privacy." (*Id.* ¶¶ 45–46 (emphasis added)).

## II.     Plaintiffs' Allegedly "Private Information" Is A Public Record Freely Available From The State Of Florida.

Plaintiffs fail to note that their information was already in the public domain. As a

"public service," the Florida Department of State's Division of Elections provides "a

monthly disk on registered voters" "who are officially registered or pre-registered as of the

end of the prior month." (Voter Extract Disk Request, Fla. Div. of Elects.,

http://dos.myflorida.com/elections/data-statistics/voter-registration-statistics/voter-extract-

disk-request/ (last visited August 24, 2017); Voter Extract Disk Layout, Fla. Div. of Elects.,

http://dos.myflorida.com/media/ 696057/voter-extract-file-layout.pdf (last visited August 24,

---

[3]      Citing a Newsweek article, Plaintiffs note that "[v]oting records with nearly identical Private Information to that stolen [from DRA] has been up for sale on the Dark Web." (Compl. ¶ 20). Plaintiffs, however, do not claim it is the information taken from DRA, nor would they have any basis to make such an allegation. The Newsweek article Plaintiffs cite indicates that the information for sale on the Dark Web is "believed to have been obtained through Freedom of Information Act requests, website requests and 'social engineering.'" Ryan Bort, *Voting Records of Over 40 Million Americans Up For Sale On Dark Web*, NEWSWEEK (July 27, 2017 12:58 PM), http://www.newsweek.com/voting-records-sale-dark-web-642892.

2017) ("Voter Extract Disk Layout")).[4] The disk includes, *inter alia*, the registered names, registered addresses, registered email addresses, registered telephone numbers, registered dates of birth, and voter ID numbers for voters (*id.*)—*i.e.*, the information Plaintiffs apparently classify as "Private Information" (Compl. ¶ 1). Since January 2013, the Division of Elections has provided information to the public 3,683 times in response to public records requests. (Ex. A, Decl. of Jon R. Knight at ¶ 8). As recently as July 2017, Plaintiffs' supposedly "Private Information" was included on this disk provided by the Florida Division of Elections. (*Id.* at ¶ 6). Anyone can request access to this information today, tomorrow, or in the distant future.

The Division of Elections places Florida voters on notice that their "name, address, date of birth, party affiliation, and when [they] voted is public information" and may "find its way onto the Internet or websites." (Voter Information As a Public Record, Fla. Div. of Elects., http://dos.myflorida.com/elections/for-voters/voter-registration/voter-information-as-a-public-record/ (last visited August 24, 2017) ("Voter Information As a Public Record"). There are, however, some individuals working in various public positions whose information may be exempt from being released as a public record by the Division of Elections. (*See id.*; *see also* Fla. Stat. Ann. § 119.071(4)(d)(2)(a)–(p) (listing categories of persons who may be

---

[4]     DRA requests that the Court take judicial notice of the content on the public website of the Florida Division of Elections, as well as of the content of the Florida Voter Extract File from July 2017 and the results of an official records request from DRA's counsel. Copies of these documents and information have been provided to Plaintiffs' counsel and the Court.  The Court may take judicial notice of these facts without converting this motion to dismiss into a motion for summary judgment. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). These are all public records that were "not subject to reasonable dispute" because they were "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." *Id.* To the extent this Court denies the request for judicial notice, then DRA withdraws any reliance on this information for purposes of this motion to dismiss.

exempt from having their home addresses, telephone numbers, places of employment, and dates of birth disclosed as a public record)). However, in order for the Division of Elections to withhold their information, these eligible individuals must expressly request for their information to be exempt from the public record. (Fla. Stat. Ann. § 119.071(4)(d)(3) (requiring agencies to "maintain the exempt status of that information only if the [individual] submits a written request")).

Even if an eligible individual has opted out under the statute, the Florida Division of Elections will still release that individual's Voter ID number, gender, race, party affiliation, voter registration date, precinct, district, and voting history. (Voter Extract Disk Layout at 2–3; Ex. A at ¶ 5). Additionally, if previously-ineligible individuals become eligible for an exemption under the statute and opt out, their information may already have been released as a public record before they became eligible. For example: on average, each year Florida provides 818 copies of the Voter Extract File to members of the public, including individuals, academic institutions, political parties and campaigns, and corporate entities. (Ex. A at ¶ 8). If an individual was a registered Florida voter in 2013 or earlier, her information—name, address, phone number, email, etc.—would have been released as a public record in response to all requests for the Florida Voter Extract file made in 2013. But, if the same individual was subsequently entitled in 2014 to have her information exempt from disclosure and requested that the Board of Elections exempt her information, that exemption would not undo the numerous prior disclosures of her information as a public record in 2013. Nor would anyone who previously received a disk from the Board of Elections containing her information be aware that she had subsequently opted out unless she contacted them directly and requested

that her information be removed. It is for this reason that the Board of Elections informs voters that "[o]nce information is in the public domain, you will need to contact the owner or administrator of third-party sites in order to get the information removed." (Voter Information As a Public Record).

**LEGAL STANDARDS**

### A.    Subject Matter Jurisdiction – Rule 12(b)(1)

Under Article III, section 2 of the United States Constitution, the judicial power of the United States extends only to "[c]ases" and "[c]ontroversies" in which the Plaintiffs have "[s]tanding to sue[.]" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also* U.S. Const. art. III, § 2. Standing is jurisdictional, and is evaluated under the standards for a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). Plaintiffs bear the burden of proving standing, which requires a three-part showing: (1) Plaintiffs suffered or will imminently suffer an injury-in-fact; (2) a causal connection exists between the injury and Defendant's conduct; and (3) Plaintiffs' injury is likely to be redressed by a favorable decision. *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010). The injury-in-fact element requires "a legally cognizable interest that has been or is imminently at risk of being invaded." *Id.* Such injury must be "*certainly impending* to constitute injury in fact" and "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal quotes omitted).

Motions to dismiss under Rule 12(b)(1) may challenge subject-matter jurisdiction either facially or factually. When the challenge is a facial attack, "the court merely looks to

determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion." *Lamb v. Charlotte Cty.*, 429 F. Supp. 2d 1302, 1305 (M.D. Fla. 2006) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Factual attacks under Rule 12(b)(1), in contrast, are resolved "irrespective of the pleadings," and courts may consider extrinsic evidence. *Id.* (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

**B.      Personal Jurisdiction – Rule 12(b)(2)**

The Court must also have personal jurisdiction over a defendant. To survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff "seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

> First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute. Second, once it has determined that the long-arm statute is satisfied, the court must determine whether plaintiff's assertion of jurisdiction comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice.

*Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citations omitted). Absent allegations sufficient to satisfy Florida's long-arm statute, there is no need to analyze the constitutional due process requirements. *Id.*; *see also Abramowitz v. Westport Nat'l Bank*, No. 09-60510-CIV, 2009 WL 10667468, at *3–4 (S.D. Fla. Nov. 5, 2009).

**C.      Failure to State a Claim – Rule 12(b)(6)**

Even if standing and personal jurisdiction are satisfied, under Rule 12(b)(6) a complaint must "state a claim upon which relief can be granted," and "only well-pleaded

factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff." *Crenshaw v. City of Defuniak Springs*, No. 3:13CV50/MCR/EMT, 2014 WL 667689, at *5–6 (N.D. Fla. Feb. 20, 2014). The plaintiff must allege more than mere "labels and conclusions"; and the complaint must include "[f]actual allegations ... [sufficient] to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations and internal quotations omitted). A complaint must allege facts sufficient to show that the legal allegations are not simply possible, but *plausible. See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555. When considering a Rule 12(b)(6) motion, the reviewing court must accept all allegations as true and view them in the light most favorable to the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (per curiam). Importantly, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010).

<u>**ARGUMENT**</u>

**I.      Plaintiffs' Voter Information Is Not "Private Information" As A Matter Of Law.**

In order to have been injured, to have standing, and to have alleged a valid cause of action, Plaintiffs' allegedly "Private Information" must have in fact been private. In other words, if Plaintiffs' "Private Information" was not actually private, Plaintiffs could not have been damaged or have any cognizable claim. The crux of Plaintiffs' Second Amended Complaint—that Plaintiffs' "names, addresses, email addresses, telephone numbers, dates of birth, and voter ID numbers" constituted "Private Information" (Compl. ¶ 1)—is wrong as a

matter of law.[5] Plaintiffs' supposedly "Private Information" was (and still is) public.

Under Florida law, voter information is a public record. The public has a right under the Florida Constitution to access registered voter information. Subject to limited exceptions, the Florida Constitution provides every person "the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf[.]" Fla. Const. art. I, § 24(a); *see also id.* art. VI, § 2 (designating all registered voters as official electors). This section "creates a right of access to public records unless the records in question have been specifically exempted or made confidential." *Rios v. Direct Mail Express, Inc.*, 435 F. Supp. 2d 1199, 1203 (S.D. Fla. 2006). There is a high hurdle to create an exemption: they must be established in a law passed by a two-thirds vote of each house and must "state with specificity the public necessity justifying the exemption and shall be no broader than necessary to accomplish the stated purpose of the law." Fla. Const. art. I, § 24(c).

The Florida Legislature subsequently exempted from public access certain voter information, exempting only: (1) declinations to register to vote; (2) where a person

---

[5]     Plaintiffs additionally allege that the "reddit.com browsing history" was part of the information disclosed. (Compl. ¶ 1). It is unclear whether Plaintiffs are misdescribing reports of the incident or whether their allegations go beyond the scope of those reports. Plaintiffs attach and cite the UpGuard Report as the basis for most of the factual allegations in their Complaint, including as the basis for what information was disclosed. (*Id.* ¶¶ 12–16, Compl. Ex. A). The UpGuard Report does not state that "browsing history" was disclosed. Rather, it was "a large cache of Reddit posts, saved as text." (Compl. Ex. A at 2). As a general matter, all Reddit posts are publicly available, and archives of these posts have been available online for more than two years. *See, e.g.*, Reddit Datasets, *I have Every Publicly Available Reddit Comment for Research* (Submitted July 3, 2015), *available at* https://www.reddit.com/r/datasets/comments/3bxlg7/i_have_every_publicly_available_reddit_ comment/ (last visited June 29, 2017). If, however, Plaintiffs are alleging that the incident disclosed their browsing history, they fail to provide sufficient details to make that allegation anything more than "speculative," considering that there is no allegation DRA had access to the computers on which that browsing history resided or that Plaintiffs ever made any postings on Reddit.com. *Twombly*, 550 U.S. at 555. Plaintiffs have also failed to explain how that information could be private in nature or how Plaintiffs (or any individual) was or could have been harmed by the release of such information. There simply is no reasonable connection between "reddit.com browsing history" and a future injury resulting from an increased risk of identity theft.

registered to vote or updated their registration, (3) certain identification numbers such as social security numbers, and (4) signatures. Fla. Stat. Ann. § 97.0585(1)–(2). Additionally, certain categories of individuals may request to be exempt from having their address, telephone, and date of birth released as a public record. Fla. Stat. Ann. § 119.071(4)2–3. The Legislature has not exempted any other voter information. Plaintiffs' supposedly "Private Information" does not fall within any exempted category. Nor do Plaintiffs allege that they are eligible for an exemption, or have opted out, under Fla. Stat. Ann. § 119.071. Thus, their information is an accessible public record under the Florida Constitution and state law.

Additionally, Plaintiffs' allegedly "Private Information"—along with the same information for nearly all Florida voters—is currently available as a public record for free from the Florida Division of Elections via a monthly "Voter Extract Disk." *See supra* Statement of Facts Section II; Ex. A at ¶¶ 4–6.[6] The Division of Elections has provided at least 3,683 copies of this disk to those who have requested it since January 2013, underscoring the fact that information about registered voters was (and remains) public before this incident. Ex. A at ¶ 8. Moreover, Plaintiffs were expressly on notice that their allegedly "Private Information" could be freely obtained by third parties and might be posted on the internet. Statement of Facts Section II. Thus, as a matter of Florida constitutional law, statutory law, and Division of Election guidance and practice, Plaintiffs' allegedly "Private Information" is in fact public – and this fact alone provides sufficient grounds for dismissal.

---

[6] As noted above, Plaintiffs' purportedly "Private Information" was included on the disk provided by the Florida Division of Elections in July 2017—after Plaintiffs filed suit. (Ex. A, at ¶ 6). A copy of that disk has been provided to Plaintiffs and the Court. (*Id.* at ¶ 4).

**II.    Plaintiffs' Complaint Lacks Subject Matter Jurisdiction.**

**A.    Plaintiffs Have No Standing.**

Because Plaintiffs are unable to identify any protected "Private Information," they have not and cannot allege that DRA has caused them any injury-in-fact sufficient to justify standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum of standing comprises three elements: injury-in-fact, causation, and redressability." *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016) (internal quotes omitted). Injury-in-fact means "an invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Id.* at 1002. Causation requires a "connection" between that injury and the defendant's conduct—*i.e.*, the injury must be fairly traceable to that conduct. *See Lujan*, 504 U.S. at 560–61.

Plaintiffs' allegations fail these tests for three reasons. *First*, Plaintiffs have not alleged an invasion of a legally protected interest. "[I]f the plaintiff's claim has no foundation in law, he has no legally protected interest and thus no standing to sue." *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997); *see also Austin and Laurato, P.A. v. United States*, 539 F. App'x 957, 960–61 (11th Cir. 2013); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 899 (N.D. Ill. 2012) (denying motion to amend complaint to add negligence claims following a data breach because "neither Illinois common law, PIPA, nor HIPAA provides a basis for Worix's negligence claims"). Plaintiffs have not identified any duty that protects already-public information about them from further disclosure, imposes liability on DRA for further disclosure, or creates a private cause of action. Indeed, the opposite is true: "interests in privacy fade when the information involved already appears on the public record." *Cox*

*Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95 (1975); *see also FDIC v. Dye*, 642 F.2d 833, 836 (5th Cir. 1981) (finding no legal violation because the "release of public information to the same 'public' is not a disclosure")[7]; *Drennon-Gala v. Holder*, No. 1:08-CV-321G-JEC, 2011 WL 1225784, at *7 (N.D. Ga. Mar. 30, 2011) (finding that releasing information on plaintiff's psychiatric condition was not a privacy violation when the information was already publicly available). Because Plaintiffs' "Private Information" already was (and is) a public record, Plaintiffs have no legally cognizable interest and therefore no standing.

*Second*, Plaintiffs have not alleged a "concrete" injury-in-fact. "A 'concrete' injury must be '*defacto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. While the risk of real harm may constitute a concrete injury, *id.* at 1549, "a threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury are not sufficient," *Clapper*, 133 S. Ct. at 1147 (internal quotations omitted). Here, Plaintiffs have not experienced actual identity theft or any unreimbursed out-of-pocket costs. For example, they have not alleged any actual or attempted fraudulent charges on bank or credit cards, or the opening of fake accounts in their names. *See Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1282–83 (M.D. Fla. 2016) (Byron, J.) (listing examples of "actual identity theft" and collecting cases).

Plaintiffs' only alleged "injury" is the increased risk that identity theft may occur at some unspecified point in the future and result in some unspecified unreimbursed monetary damages. (Compl. ¶¶ 45–46). Indeed, Plaintiffs readily admit that injury from this increased

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to the close of business of September 30, 1981.

risk "*may take months, if not years,* to discover and detect[.]" (Compl. ¶ 45 (emphasis added)). The possibility of identity theft at some unknown time "months, if not years" in the future, is quintessentially a "possible future injury." *Clapper*, 133 S. Ct. at 1147; *see also Torres*, 195 F. Supp. 3d at 1283–84.

Even assuming identity theft could occur based on the disclosure of publicly-available information, the mere threat of future harm is not sufficient to confer standing. As this Court noted in *Torres*, "the majority of courts *post-Clapper* have rejected the threat of future harm in data breach cases as insufficient to confer standing absent allegations that harm is 'certainly impending.'" *Torres*, 195 F. Supp. 3d at 1283 (collecting cases).[8] "[O]ne influential factor [for determining whether harm is impending] is the number of plaintiffs in the class action who experienced fraudulent charges." *Id.* For example, in *Torres* the data breach plaintiff lacked standing even though he experienced one or two fraudulent charges to credit or debit cards. *Id.* Here, there are *no* allegations of fraudulent charges for *any* plaintiffs, and "[w]hether the plaintiffs will actually suffer the threatened harm depends on whether the hackers actually obtained the [purportedly private personal information],

---

[8]    Numerous other courts, including those considering the issue following the Supreme Court's *Spokeo* decision, have found that alleged injury insufficient to confer standing. *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262, 273–77 (4th Cir. 2017) (finding, post-*Spokeo*, that Plaintiffs had not shown a concrete injury for Privacy Act claims based on "(1) the increased risks of future identity theft, and (2) the costs of protecting against the same" following multiple data breaches); *see also In re SuperValu, Inc.* --- F.3d ---- , No. 16-2378, 2017 WL 3722455, *4–5 (8th Cir. August 30, 2017) (finding that plaintiffs had not "sufficiently alleged a substantial risk of identity theft and plaintiffs' allegations of future injury do not support standing in this case"); *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 863 (S.D. Ind. 2016); *Green v. eBay Inc.*, No. 14-1688, 2015 WL 2066531, *5 (E.D. La. May 4, 2015); *Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847, 853–54 (S.D. Tex. 2015); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 26 (D.D.C. 2014); *Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279, 1280–81 (N.D. Ala. 2014); *U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.*, No. 13-1499, 2014 WL 3748639, at *5 (D. Minn. July 30, 2014) ("In the 'lost data' context … a majority of the courts … hold that plaintiffs whose confidential data has been exposed … but who have not yet had their identity stolen or their data otherwise actually abused, lack standing to sue the party who failed to protect their data.").

whether they intend to use [it] to commit acts that would be detrimental to the plaintiffs, whether they are capable of using the [information] to commit acts detrimental to the plaintiffs, and whether they actually do use the information to commit acts detrimental to the plaintiffs[.]" *Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537, 2016 WL 3683001, at *4 (E.D. Mo. July 12, 2016) (finding allegations regarding the increased risk of identity theft and fraud were insufficient to confer standing). Plaintiffs have not demonstrated that they suffered a concrete injury and any unreimbursed costs or monetary damages in connection with that injury. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (finding standing where plaintiff experiences actual identity theft and suffers monetary damages as a result). As such, Plaintiffs have suffered no harm and lack standing to maintain their claims.

*Third*, even assuming that at some point in the distant future Plaintiffs suffer unreimbursed monetary damages due to identity theft, it would be entirely conjectural for them to allege now that DRA's acts or omissions led to that distant injury, meaning any speculative damages would not be fairly traceable to DRA's conduct. *See Clapper*, 133 S. Ct. at 1147 (stating that respondents "cannot satisfy the 'fairly traceable' requirement" because they "can only speculate" as to the source of the asserted future harm). The type of information that was allegedly disclosed is ubiquitous: Plaintiffs openly acknowledge "the sheer amount of information citizens knowingly and unknowingly disseminate about themselves via the Internet." (Compl. ¶ 9). Plaintiffs admit that "[v]oting records with nearly identical Private Information to that stolen [from DRA]" (Comp. ¶ 20) are for sale on the internet, citing a *Newsweek* article stating that those voting records appear to have been "obtained through Freedom of Information Act requests, website requests and 'social

engineering.'" (Ryan Bort, *Voting Records of Over 40 Million Americans for Sale on Dark Web*, NEWSWEEK (July 27, 2017 12:58 PM), http://www.newsweek.com/voting-records-sale-dark-web-642892). With all that information on the internet today and troves more undoubtedly coming in the future, today there can be no reasonably-traceable link between any identity theft in the future and the disclosure of DRA's data to this cyber risk analyst. *See Unchageri v. Carefirst of Md., Inc.*, No. 16-1068, 2016 WL 8255013, at *2 (C.D. Ill. Nov. 14, 2016) ("A fairly traceable link … needs to exist between the challenged data breach and the alleged unauthorized charges on the Plaintiff's credit card."); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 960 (D. Nev. 2015) ("[E]ven if Plaintiffs suffer identity theft or fraud at some point in the future, there may be a genuine issue regarding whether [it resulted from] the Zappos's [sic] security breach[.]").

Lacking standing, the Plaintiffs' Second Amended Complaint must be dismissed.

**B.    Plaintiffs' Bare Allegations Fail To Satisfy The Amount-In-Controversy Requirement.**

Plaintiffs have not alleged facts to satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332(d)(2). In order to invoke diversity jurisdiction for their putative class action, Plaintiffs must claim that the amount in controversy exceeds the statutory threshold—$5,000,000. *Id.* If classes or claims are dismissed, the claims of the remaining class members must still meet this threshold, exclusive of interest and costs. *Id.* § 1332(d)(6). And conclusory or speculative allegations regarding the amount in controversy do not satisfy that jurisdictional minimum. *See Bradley v. Kelly Servs., Inc.*, 224 F. App'x 893, 894–95 (11th Cir. 2007) (collecting cases and affirming dismissal of complaint, noting the plaintiff's bare statement that her claims exceeded $75,000 did not satisfy jurisdictional requirements).

Similarly, contingent future damages should not be included in the amount in controversy calculation. *Mann v. Unum Life Ins. Co. of Am.*, 505 F. App'x 854, 857 (11th Cir. 2013) (finding that "future loss of revenue from yet-to-be renewed [insurance] policies" could not be included in the amount-in-controversy calculation because "such valuation is speculative, filled to the brim with assumptions about policyholder behavior and Florida insurance rates"); *Hughes v. McDonald's Corp.*, No. C 14-1700 PJH, 2014 WL 3797488, at *2 (N.D. Cal. July 31, 2014) (refusing to include "future damages in the amount in controversy calculation" and collecting cases).

Here, Plaintiffs' bald statements that "the amount in controversy exceeds $5,000,000" (Compl. ¶ 3) or that their damages are "considerably more than $5,000,000" (*id.* ¶ 46(A)) do not satisfy these jurisdictional requirements. *First*, Plaintiffs make no factual allegations that support this amount in controversy. This alone is a basis to dismiss their complaint for lack of subject matter jurisdiction. *See Bradley*, 224 F. App'x at 895; *Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 5305468, at *4 (S.D. Fla. Oct. 15, 2014). *Second*, as discussed above, Plaintiffs' speculative potential losses from speculative possible identity theft occurring at some speculative time in the future are "woefully insufficient to meet the amount in controversy requirement." *Louis v. Toyota Fin. Servs.*, No. 1:15-CV-84-MP-GRJ, 2015 WL 6167407, at *3 (N.D. Fla. Sept. 3, 2015), *report and recommendation adopted*, 2015 WL 6159480 (N.D. Fla. Oct. 20, 2015); *see also Mann*, 505 F. App'x at 857. As such, the Court lacks subject matter jurisdiction and the Second Amended Complaint should be dismissed.

## III. Plaintiffs Have Failed To Plead Facts To Sustain Personal Jurisdiction Over DRA.

Plaintiffs still have not alleged facts sufficient to establish this Court's exercise of

personal jurisdiction over DRA. There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of Cal., S. F. Cty.*, 137 S. Ct. 1773, 1779–80 (2017). For general jurisdiction over a corporation, the forum must be "one in which the corporation is fairly regarded as at home." *Id.* General jurisdiction is inapplicable here as Plaintiffs admit that DRA is a "Virginia limited liability company" and "citizen of Virginia" with its principal place of business in Virginia. (Compl. ¶¶ 3, 8). Plaintiffs have not alleged that DRA is registered in Florida, has an office in Florida, or has agents or any other business contacts with Florida.

Plaintiffs also have not alleged—and cannot allege—facts sufficient for specific personal jurisdiction. To exercise specific jurisdiction over a nonresident defendant like DRA, the conduct must fall within the reach of Florida's long-arm statute—Fla. Stat. Ann. § 48.193(1)(a)—and the exercise of jurisdiction must be consistent with federal due process. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *see Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779 (stating that, for specific jurisdiction, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*" (internal quotations omitted)).

Here, Plaintiffs allege this Court has personal jurisdiction over DRA because DRA "collected data from Florida residents" and "the harm more particularly alleged herein occurred to Florida residents." (Compl. ¶ 4). These allegations do not satisfy the long-arm statute, which contains specific requirements when the alleged acts or omissions occur outside of Florida. *First*, DRA's alleged acts or omissions occurring outside of Florida resulting in alleged injury to persons within Florida does not establish personal jurisdiction unless DRA was engaged in solicitation or service activities in Florida, or processed,

serviced or manufactured products, materials, or things used or consumed in Florida. Fla. Stat. Ann. § 48.193(1)(a)(6). The Plaintiffs do not—and cannot—make any such allegations. To be clear, there is no allegation that DRA solicited or provided any business services to Plaintiffs, nor that any information DRA may have had on Plaintiffs was "collected," processed, used, or consumed within Florida.

*Second*, the Second Amended Complaint does not allege that DRA committed a any act, tortious or otherwise, within Florida. But even if they had, to find personal jurisdiction based on "committing a tortious act within this state," Fla Stat. Ann. § 48.193(1)(a)(2), "the plaintiff must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida w[ere] essential to the success of the tort." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990). Again, there are no such allegations. Plaintiffs do not, and cannot, allege that DRA *committed* any action in Florida that was essential to the success of the tort. As alleged, no substantial aspect of the tort was committed in Florida: DRA did not contact Florida residents or store Plaintiffs' data in Florida; the unauthorized access did not occur in Florida; the cyber analyst was not in Florida; and the misappropriated data is not in Florida.

*Third,* Plaintiffs make no allegations DRA operates a business or has an office within Florida, owns or uses real property within Florida, entered into contracts within Florida, or was contractually obligated to perform acts within Florida. *See* Fla. Stat. Ann. § 48.193(1)(a)(1), (3)–(5), (7)–(9). In sum, there is no allegation that DRA had contact with the State of Florida sufficient to fall within the long-arm statute.

But even if Plaintiffs' allegations had satisfied Florida's long-arm statute, they do not satisfy the due process requirements of the Fourteenth Amendment of the United States Constitution, meaning "minimum contacts" do not exist between DRA and Florida and the exercise of jurisdiction offends "traditional notions of fair play and substantial justice." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999). In the Eleventh Circuit, minimum contacts will be found only if the contacts are "related to the plaintiff's cause of action," "involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum," and the contacts with the forum are such "that the defendant should reasonably anticipate being haled into court there." *Id.* Here, Plaintiffs have not alleged *any* contacts between DRA and Florida, much less contacts that are related to Plaintiffs' negligence claims. Nor have Plaintiffs alleged *any* acts by which DRA "manifest[ed] an intention to submit to" Florida's power. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (plurality). The fact that an injury may occur in Florida at some point in the distant future is not enough. *See id.* (finding that although an injury had occurred within the forum, there was no specific personal jurisdiction over a foreign defendant that had no office in the forum and did not pay taxes, own property, or advertise there).

Lacking personal jurisdiction over DRA, Plaintiffs' Second Amended Complaint must be dismissed. *See Trans-Siberian Orchestra*, 689 F. Supp. 2d at 1312 (dismissing a complaint with prejudice for lack of personal jurisdiction); *Abramowitz*, 2009 WL 10667468, at *3–4; *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1346 (M.D. Fla. 2007) (finding no personal jurisdiction in Florida over an Arizona resident and his Nevada corporation because there were no allegations of Florida contacts or actions).

**IV.    Plaintiffs' Complaint Fails To State A Claim For Which Relief Can Be Granted.**

Plaintiffs' sole count for negligence is baseless as a matter of law. To state a negligence claim under Florida law, a plaintiff must show that (1) the defendant owed plaintiff a duty of reasonable care, (2) the defendant breached that duty, and (3) the plaintiff suffered damages as a result. *Jackson v. Sweat*, 783 So.2d 1207 (Fla. Dist. Ct. App. 2001); *Kayfetz v. A.M. Best Roofing, Inc.*, 832 So.2d 784, 786 (Fla. Dist. Ct. App. 2002). But DRA has not breached a legal duty to Plaintiffs, nor have Plaintiffs suffered any injury or damage.

**A.    The Florida Information Protection Act Eliminates Any Common Law Negligence Claim By Plaintiffs.**

The Florida Legislature's enactment of a specific statute regarding the protection of personal information—the Florida Information Protection Act ("FIPA")—supplants any hypothetical general common law standard or duty of care. FIPA codifies the scope of protectable information, the corresponding required data security standards, and when notice must be provided following a breach. *See generally* Fla. Stat. Ann. § 501.171.[9] By enacting FIPA, "it is unlikely that the legislature intended to sanction the development of common law tort remedies that would apply to the same factual circumstances addressed by the statute." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 637 (7th Cir. 2007) (finding that an Indiana statute indicated the legislature did not intend to allow a claim under Indiana common law).

---

[9]    The Second Amended Complaint expressly pleads that "the harm more particularly alleged herein occurred to Florida residents." (Compl. ¶ 4). While the definition of the classes in the Complaint includes individuals outside of Florida, Plaintiffs have not alleged a violation of any federal or other state law. If the Court were to conclude that it has jurisdiction over DRA and that Plaintiffs have stated a claim, the Court should nevertheless narrow the complaint only to claims under Florida law.

Plaintiffs impliedly admit they do not have an actionable claim under FIPA.[10] Their supposedly "Private Information" is publicly available from the State of Florida and thus not subject to FIPA. Fla. Stat. Ann. § 501.171(1)(g)(2). Even if Plaintiffs' information were not publicly available from the State of Florida, there is no allegation that any information disclosed falls within FIPA's definition of "personal information." Fla. Stat. Ann. § 501.171(1)(g)(1)(a).[11] Moreover, DRA is not a "covered entity" under FIPA, meaning there are no allegations that DRA ever acquired, maintained, stored, or used data within FIPA's definition of "personal information." Fla. Stat. Ann. § 501.171(1)(b) (defining "covered entity"). Nor is Plaintiffs' "Private Information" a "customer record" protected under FIPA. Fla. Stat. Ann. § 501.171(1)(c) (defining "customer record" as information "provided by an individual in this state to a covered entity for the purpose of purchasing or leasing a product or obtaining a service.").[12] Plaintiffs cannot cure their inability to bring a FIPA claim. And FIPA's clear standards for data privacy leave no room for Plaintiffs' novel state common law theory.

---

[10] Plaintiffs' original complaint included a count for negligence *per se* based on a violation of FIPA. After DRA filed its original Motion to Dismiss, Plaintiffs dropped that count, presumably because Defendant's arguments in its prior Motion to Dismiss were "well-taken."

[11] The statute defines "personal information" as "[a]n individual's first name or first initial and last name in combination with any one or more of the following data elements for that individual: (1) social security number, (2) driver license or identification card number, passport number, military identification number, or other similar number issued on a government document used to verify identity, (3) financial account number or credit or debit card number, along with any required security code or password, (4) medical history, or (5) health insurance information." Personal information also includes an individual's "user name or e-mail address, in combination with a password or security question and answer that would permit access to an online account." *Id.* § 501.171(1)(g)(1)(b). There is no allegation—and no suggestion in the UpGuard article—that DRA had access to any such data, let alone that that data was included in the information involved in the cyber incident.

[12] Here, there is no allegation that Plaintiffs ever spoke with, contacted, or provided any information to DRA. Nor is there any allegation that Plaintiffs were trying to purchase or lease a product or obtain a service from DRA.

**B.** **DRA Did Not Owe Or Breach A Duty To Plaintiffs, Because Plaintiffs' "Private Information" Was Already Public.**

Even if FIPA leaves room for a novel common law claim, Plaintiffs have not sufficiently alleged that DRA owed or breached a duty to Plaintiffs. *First*, Plaintiffs allegations about the duty of care owed by DRA are naked legal conclusions without an adequate supporting factual basis. Plaintiffs allege, for example, that DRA breached a duty to "use reasonable care to adequately protect and secure" their information. (Compl. ¶ 38). They similarly allege that DRA breached a duty to "timely discover and disclose the unauthorized access and theft" of the information to them. (*Id.* ¶ 34). And they allege that DRA had a duty to follow certain "standard information security principles." (*Id.* ¶ 37). But whether such duty exists is a question of law, not fact. *Aircraft Logistics, Inc. v. H.E. Sutton Forwarding Co., LLC.,* 1 So.3d 309, 311 (Fla. Dist. Ct. App. 2009) (citing *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992)); *see also Goldberg v. Fla. Power & Light Co.*, 899 So.2d 1105, 1110 (Fla. 2005) (determination of the existence of a duty of care in a negligence action is a question of law). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and none of these allegations constitute an actual duty under the law. *Jacobs*, 626 F.3d at 1333. Accordingly, Plaintiffs' negligence claim should be dismissed.

*Second*, there no common law standard or duty of care for data security in Florida. Even if there were a generally recognized data security duty, Plaintiffs' claim for negligence would still fail to state a claim because no common law duty requires any person who obtains public records information to handle them in a certain manner. Here, as a matter of law, Plaintiffs' alleged "Private Information" is already a public record. *See supra* Argument

Section I(A). Public records are necessarily in the public domain. *Cf. Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under [the] public domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."); *Drennon-Gala*, 2011 WL 1225784, at *7 (releasing information on plaintiff's psychiatric condition was not a privacy violation when the information was already publicly available). There is simply no legal basis to require DRA to impose greater restrictions on public records information than the state places on that same information.

*Third*, even if Florida had recognized some common law standard of care, it would not apply to information lawfully gathered from public sources and not from Plaintiffs themselves. Absent any preexisting relationship between DRA and Plaintiffs, no duty could have arisen. A common law duty of care generally[13] requires a "direct relationship between the plaintiff and the defendant." *Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (report and recommendation) (concluding "no duty of care exists in the data breach context where, as here, there is no direct relationship between the plaintiff and the defendant"); *see also Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08-CIV-6060-RMB-RLE, 2010 WL 2643307, at *9 (S.D.N.Y. June 25, 2010) (granting summary judgment on negligence claims in data breach context where "[n]one of the named Plaintiffs had any direct dealings with Defendant"). There is no allegation that DRA has any relationship with Plaintiffs. Lacking a relationship, DRA had no

---

[13] Florida has articulated limited exceptions to this rule based on particular relationships and circumstances. *See First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 14 (Fla. 1990). None of these limited exceptions apply here.

duty, and Plaintiffs' negligence claim should be dismissed.[14]

### C. Plaintiffs Have Not Sufficiently Alleged Injury Or Causation.

Plaintiffs' negligence claim should also be dismissed because they have not alleged actual damages from any injury caused by DRA. As noted *supra*, Plaintiffs have not been damaged. *See* Argument Section II. They have not alleged that their identities have in fact been stolen, that they have faced fraudulent charges on credit cards, or any of the hallmarks of actual injury and damage from a data breach. Rather, they assert a conclusory allegation that they have been injured by DRA's conduct. (Compl. ¶¶ 45–46). This "label[] and conclusion[]" and "threadbare recitals of the elements" of negligence are not sufficient to survive a motion to dismiss under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555; *see Jacobs*, 626 F.3d at 1333.

The Eighth Circuit recently reached a similar conclusion in a data breach case involving the disclosure of Social Security Numbers, tax identification numbers, and other truly personal information. *Kuhns v. Scottrade, Inc.*, --- F.3d ----, No. 16-3426, 2017 WL 3584046, *1–2 (8th Cir. Aug. 21, 2017). In that case, the Eighth Circuit affirmed a dismissal

---

[14]     Aware of these defects in their original Complaint, Plaintiffs now allege that Plaintiffs are "third-party beneficiaries to any contract concerning data analytics between Deep Root and its client(s)," and "on information and belief, such contracts, whether written or implied, contain provisions for the protection and confidential treatment of the Private Information for the benefit of Plaintiffs and the Class Members." (Compl. ¶ 33). But Plaintiffs do not assert a breach of contract claim, and cannot identify the existence of any actual contract. Rather, DRA assumes that Plaintiffs include this allegation in order to suggest that DRA owed some duty to Plaintiffs as third party beneficiaries. But this speculative allegation is still insufficient. In Florida, "to maintain a cause of action for breach of a third party beneficiary contract, the party asserting the third party beneficiary status must allege that the parties to the contract "actually and expressly intended to benefit the third party," *Catatonic Investments Corp. v. Great Am. Assurance Co.*, No. 14–cv–21621, 2014 WL 11997839, at *2 (S.D. Fla. Nov. 25, 2014). An "incidental or consequential benefit" to a third party is insufficient to sustain a claim. *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1398 (S.D. Fla. 2014). Here, Plaintiffs have made no such allegations other than the threadbare allegation of the existence of some unknown contract which incidentally may have been drafted to benefit them.

with prejudice for failure to state a claim on the ground that the plaintiffs "failed to plausibly allege actual damage." *Id.* at *4. While hackers stole the personal information, "no customer affected by the [] data breach suffered fraud or identity theft that resulted in financial loss from use of their stolen [information]." *Id.* As the Eighth Circuit succinctly stated "[m]assive class action litigation should be based on more than allegations of worry and inconvenience." *Id.*

Furthermore, even if Plaintiffs had sufficiently alleged damage or injury, their claim would still fail as a matter of law because they have not sufficiently alleged causation. Florida courts follow a "'but for' causation-in-fact test, that is, to constitute proximate cause there must be such a natural, direct and continuous sequence between the negligent act or omission and the plaintiff's injury that it can be reasonably said that *but for* the negligent act or omission the injury would not have occurred." *Tieder v. Little*, 502 So. 2d 923, 925 (Fla. Dist. Ct. App. 1987) (internal citations and alterations omitted); *see also Deese v. McKinnonville Hunting Club, Inc.*, 874 So. 2d 1282, 1287 (Fla. Dist. Ct. App. 2004) (noting that Florida courts use the causation-in-fact test for negligence cases). Here, even if the Plaintiffs someday suffer the damages they purport to identify, DRA's alleged disclosure of Plaintiffs' information cannot now be reasonably said to be the cause. That distant damage in the future might be "due to the sheer amount of information citizens knowingly and unknowingly disseminate about themselves" (Compl. ¶ 9), through other public records requests by third parties, or through some other means. The causation element of Plaintiffs' negligence claim does not satisfy the requirements of *Twombly* and *Iqbal*, and that claim should be dismissed.

## V. Plaintiffs Have Not Properly Alleged The Existence Of A "Protected Class."

The Plaintiffs did not substantively respond to DRA's "well-taken" first motion to dismiss and instead requested 30 days to amend in order to "add additional class representatives and subclasses." (Dkt. 21). Plaintiffs' Second Amended Complaint includes allegations regarding a "Protected Class." (Compl. ¶ 22). But the Second Amended Complaint did not add any additional class representatives. And the Second Amended Complaint contains no allegation that the named Plaintiffs themselves are members of the Protected Class—because they are not. *See supra* Argument Section I. Consequently, claims for the Protected Class must be dismissed. *Jameson v. State Farm Mut. Auto. Ins. Co.*, 871 F. Supp. 2d 862, 873 (W.D. Mo. 2012) (denying a motion to amend to add class action allegations because "plaintiff is not a member of her proposed class currently" and "could never be a member of the class"); *Georges v. Accutira Mortg., Inc.*, No. 4:08–cv–201 (JCH), 2008 WL 2079125, at *6 (E.D. Mo. May 15, 2008) (granting dismissal of class action allegations against a defendant because the named plaintiff "fail[ed] to satisfy this threshold requirement" and was not a "member of the class [he] seeks to represent").

Even if the named Plaintiffs could represent the putative Protected Class or additional named Plaintiffs were identified, these class claims are fatally defective because the class definition is overbroad and would "impermissibly include[] members who have no cause of action as a matter of law." *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (per curiam).[15]

---

[15]     *See also Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007) (citing *Andrews v. Home Depot U.S.A., Inc.,* No. Civ.A.03CV5200 (DMC), 2005 WL 1490474, at *2 (D.N.J. June 23,

The alleged Protected Class are those individuals "residing in Florida whose Private Information is protected from disclosure pursuant to Section 119.071." (Compl. ¶ 21). But the statute Plaintiffs cite provides that the information will be protected and exempt from disclosure "only if the [relevant individual] … submits a written request" that the information not be disclosed. Fla Stat. Ann. 119.071(4)(d)(3). Thus, the Protected Class improperly includes those who could never have a possible claim, including: those whose information was not disclosed in the cyber incident involving DRA; those who are eligible for exemption under the statute but have not submitted a written request that the information be protected; and those who submitted such a request after Florida released their information to the public in a Voter Extract Disk Request. As such, it is clear from Plaintiffs' Second Amended Complaint that the allegations regarding the Protected Class should be dismissed.[16]

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice. Plaintiffs have already amended their Complaint twice to address DRA's "well-taken" arguments supporting dismissal and yet they have not cured the issues

---

2005)) (dismissing class allegations prior to the class certification stage "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met"); *see also Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015) (dismissing plaintiff's class allegations because "class treatment on the face of the complaint leaves little doubt they are not viable"); *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL 2885887, at *4 (D.N.J. July 23, 2008) (dismissing class allegations that were "too individualized to lend themselves to class action treatment"); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151–53 (N.D. Cal. 2010) (striking class allegations without leave to amend because of the predominance of individual issues); *Saunders v. BellSouth Advert. & Pub. Corp.*, No. 98–1885–CIV, 1998 WL 1051961, at *2 (S.D. Fla. Nov. 10, 1998) (granting a motion to dismiss class action claims because individualized factual inquiries would predominate over any class-wide issues).

[16]    Here, DRA only raises arguments to dismiss Plaintiffs' Protected Class allegations that are present on the face of the Amended Complaint. It is not intended to be a recitation of all possible arguments against class certification. In the event the Court denies this motion to dismiss, DRA reserves its rights to raise additional arguments during subsequent briefing regarding class certification.

regarding standing, lack of personal jurisdiction, failure to state a claim, and class representatives. (Dkt. 21). In such situations, it is appropriate to dismiss with prejudice. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) (noting district courts are not required to give "more than one opportunity to amend a deficient complaint," particularly when the plaintiff is represented by counsel and "has failed to cure a deficient pleading after having been offered ample opportunity to do so.").

Dated: September 13, 2017          Respectfully submitted,


/s/ William C. Jackson
William C. Jackson, Trial Counsel
Travis LeBlanc
Jon R. Knight
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Suite 1100
Washington, DC 20005
202-237-2727
202-237-6131 (Fax)
wjackson@bsfllp.com
tleblanc@bsfllp.com
jknight@bsfllp.com

Karen C. Dyer
Florida Bar No. 716324
BOIES SCHILLER FLEXNER LLP
121 South Orange Avenue, Suite 840
Orlando, Florida 32801
407-425-7118
407-425-7047 (Fax)
kdyer@bsfllp.com

*Attorneys for Defendant Deep Root Analytics, LLC.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 13, 2017, I electronically filed the foregoing by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have registered to receive notices from the court under the CM/ECF system.


/s/ Jon R. Knight
Jon R. Knight